IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ERIN VOGEL                                    Civil Action No. 1:13-CV-02472-CMA-MJW

Plaintiff,

vs.

STANDARD INSURANCE COMPANY,
an Oregon Corporation

Defendant

---

## MOTION TO STRIKE EXPERT TESTIMONY PURSUANT TO F.R.E. 702

---

Plaintiff, Erin Vogel, by and through her counsel, INDERWISH & BONIFAZI, P.C., hereby submits this Motion to Strike Expert Testimony Pursuant To F.R.E. 702.   In support, Plaintiff states the following:

### I.     SUMMARY OF CASE FACTS

On August 25, 2012, Todd Vogel, husband of Erin Vogel, the Plaintiff, and parent to four beautiful young children died of fresh water asphyxia at Cherry Creek State Reservoir.  At the time, Todd was the assistant principal at Chaparral High School in Douglas County, Colorado.  Todd was celebrating his anniversary with his wife and four friends on an evening boat outing.  The Vogels joined Kimberly and Trevor Watrous and Janessa and Andy Dewitt.  Both Andy and Trevor are very well respected teachers and Chaparral High.  At approximately 9:00 p.m., when the group was preparing to leave the reservoir, the anchor of the boat became stuck under the boat at a depth of approximately 12 feet.  Trevor and Todd, as science teachers, had a very lucid and

technical discussion as to how they would free the anchor. Trevor testified that this conversation was taken very seriously and safety was their primary concern. After discussing how to free the anchor, Todd Vogel entered the water using the anchor line to carefully descend to the bottom. Todd descended the line and the anchor was then freed and was pulled to the surface by a friend and co-worker, Trevor Watrous. Trevor testified that he felt two quick bumps at the end of the line when it was freed. Todd Vogel never resurfaced and his body was found by divers two days later. The Arapahoe County Coroner, Dr. Michael Dobersen, pronounced the official cause of death to be "fresh water asphyxia." During the autopsy, it was noted that Todd had a contusion to his lip and forehead which was consistent with some form of blunt trauma. The autopsy also determined that Todd Vogel had a blood alcohol level of .128; however, Dr. Dobersen did not attribute the cause of death or contributing cause of death to the level of alcohol determined to be found in Todd Vogel's body.

This case is brought against Standard Insurance Company for breach of contract and common law bad faith for the denial of an Accidental Death & Dismemberment (AD&D) claim. The insurance policy at issue excluded coverage for AD&D benefits, if the death was "caused or contributed to" death by the *"[v]oluntary use or consumption of any poison, chemical compound, alcohol or drug, unless used or consumed according to the directions of a physician."* The Defendant insurance company investigation of this claim was inadequate. The investigation included obtaining records from the coroner and investigating police agency, but never did Defendant ever simply speak with the other five members of the boating party who last saw Todd alive in an

2

attempt to determine if alcohol was affecting Todd.   Instead, Defendant retained physicians to review the claim who provided a conclusory opinion that due to the .128 level of alcohol in Todd Vogel's blood, this alcohol level had to have caused or contributed to his death.  The Defendant did not interview eye witnesses to the accident nor did it interview Erin Vogel concerning her husband's death.  Never does Defendant attempt to interview the coroner, Dr. Dobersen, who directly investigated the death. Rather, on the basis of the retained doctor's conclusory opinion, the Defendant denied the claim.

Plaintiff's complaint alleges the Defendant acted in bad faith when initially denying the claim on November 15, 2012, by recklessly failing to investigate facts that would demonstrate that the claim should be paid, by creating medical evidence for the sole purpose of denying the claim and by violating Colorado law pertaining to unfair claims practices.  These claims must be judged by the evidence available to the Defendant at the time that they denied the claim.  ***Pfeiffer v. State Farm Mutual Auto Insurance Company***, 940 P.2d 967 (Colo. App. 1996).  These claims cannot be judged on evidence discovered after the denials and/or obtained in the litigation even if the evidence was available to Defendant prior to the denial.  The actions of Defendant must be judged based upon only what Defendant had in its file at the time of the denial, not information obtained after the November 15, 2012 and April 12, 2013 denials.

## II.      Summary of the Argument

In order for Standard to deny a claim because the insured's death was caused or contributed by alcohol, three things must be determined: **A)**   The insured must be

intoxicated; **B)** the insured must be suffering specific affects of intoxication; and **C)** the specific affects of alcohol affecting the insured must cause or contribute to the insured death.

Standard never made any attempt to learn if Todd Vogel was suffering from specific affects of alcohol just before he entered the water, therefore, Standard could not determine the specific affects of alcohol affecting the insured that caused or contributed to his death.  Never did Standard determine element **B.**  Standards expert opinions each assume that because Todd Vogel was intoxicated that said intoxication must have caused or contributed to his death.  Standard simply assumed because element **A** was present that it could jump to element **C** and deny the claim.  Never does Standard ever attempt to satisfy element **B** through a thorough investigation determining if, at all, Todd Vogel was suffering from the affects of alcohol.  Standard simply hires three different doctors, each of whom speculate, assume, and guess that because Todd Vogel had a .128 blood alcohol level that his death must have been caused by the intoxication.  Each opinion lacks the requisite foundation required by Federal Rules of Evidence 702.

### III.    Argument

The basis for striking each expert opinion is based upon a lack of foundation pursuant to ***Daubert v. Merrell Dow Pharmaceuticals*** 509 U.S. 579 (1993).  Absent specific information detailing how alcohol was affecting Todd Vogel at the time of his death, no person can opine that Alcohol caused or contributed to his death.  Plaintiff's expert and Dr. Doberson each have opined that simply because Todd Vogel was

intoxicated at the time of his death, does not immediately conclude alcohol caused or contributed to his death.  There are various scenarios where Todd Vogel intoxication did not cause or contribute to his death.  Specifically, if the anchor hit Todd in the head and stunned him or rendered him unconscious, his intoxication would have not caused or contributed to his death.  Medically, no one can opine that alcohol caused or contributed to Todd Vogel's death because no one knows what happened that night under the water.  Any such testimony would be totally unreliable and prejudicial by confusing the jury because the *"testimony is [not] based on sufficient facts or data"*.

A.   **F.R.E. Rule 720**

Federal Rule of Evidence 702 provides that:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)**   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)**   **the testimony is based on sufficient facts or data;**
**(c)**   the testimony is the product of reliable principles and methods; and
**(d)**   the expert has reliably applied the principles and methods to the facts of the case." **[Emphasis Added]**

Courts both before and after ***Daubert*** have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include:

**(1)**   Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of

testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

(2)     Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)(noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

(3)     Whether the expert has adequately accounted for obvious alternative explanations. *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition). *Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) (the possibility of some uneliminated causes presents a question of weight, so long as the most obvious causes have been considered and reasonably ruled out by the expert).

(4)     Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). See also *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

(5)     Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1175 (1999) (*Daubert's* general acceptance factor does not "help show that an expert's testimony is reliable where the discipline itself lacks

reliability, as for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy."), *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc) (clinical doctor was properly precluded from testifying to the toxicological cause of the plaintiff's respiratory problem, where the opinion was not sufficiently grounded in scientific methodology); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988) (rejecting testimony based on "clinical ecology" as unfounded and unreliable).

**B.   Standard's Claim Representative Testified As to the Appropriate Investigation.**

Robert Clark, Defendant Standards agent, who conducted the first investigation and made the first denial made the following statement regarding the importance of knowing the affects of alcohol on the decedent in his deposition[1]:

```
13    Q:    So in your mind, the conduct of the deceased
14          in the period prior to his death is important in
15          evaluating whether alcohol caused or contributed to
16          the person's death?
17    A:    Yeah.  Again, I look at the entire context of
18          the claim.
19    Q:    Is that a yes answer?
20          Object to form.
21    Q:    (By Mr. Inderwish)  Okay.
22    A:    Yeah, it is important to me, yes.
```

It remains undisputed that Defendant Standard never interviewed any of the five survivors to evaluate whether alcohol caused or contributed to Todd Vogel's death despite Standard admitting that this information was important in making a fair and impartial decision to pay or deny the claim.   Pertaining to the instant Motion, this

---

[1] R. Clark Depo. 34:13-22

information was necessary and needed to be provided to Standard's experts in order to support any expert opinion as required by F.R.E. 702. Element **B,** as explained above, needed to be documented by Standard and then provided to each of Standard's experts. Failure to provide each expert this information causes the opinions to violate the five elements enumerated above.

Review of each of Standard's expert opinions confirms that the five *Daubert* factors cannot be met.

**C.      Standard Insurance's Expert Opinions Jump from A to C.[2]**

The legal reason that these opinions must be stricken are due to the simple fact that Standard's investigation never attempted to interview the five survivors asking each, if, or to what extent alcohol may have been affecting Todd Vogel just prior to entering the water. Standard's representatives testified in depositions that Standard was justified in relying on police reports of the incident and Standard was not required to do anything to verify the accuracy of the Police reports or to verify that the police reports were complete or correct.

Unfortunately for Standard, each of the Police reports relied upon are incomplete. Never do any of the Police interviewing the five survivors simply ask to what extent, if any, alcohol was affecting Todd Vogel before he entered the water. Standard was reckless when after reviewing the Police reports upon which Standard's denial so completely relies, Standard completely neglected to interview each of the survivors and

---

[2] Standard's Summary of Expert Reports are attached hereto as Exhibit A

ask if Todd's motor skills were impaired, or if his decision making or judgment seemed impaired or even if he may have been disoriented.

**Dr. Steven Beeson Opinion**

*"a person with a blood alcohol level of .125 **may** have significant impairment of motor skills, judgment, speech, balance, and vision"*

*"a person with Todd Vogel's level of intoxication **would** experience such symptoms"*

*"it is **likely** that Todd Vogel's consumption of alcohol contributed to Todd Vogel's drowning and death."*

Dr. Beeson is clearly unjustifiably extrapolated from an accepted premise. Specifically, Dr. Beeson offers the accepted premise that a person with a blood alcohol content of greater than .125 "may" or "is likely" to have significant impairment of motor skills, judgment, speech, balance and vision." But, Dr. Beeson then unjustifiably extrapolates that Todd Vogel "would' experience such symptoms. Without specific information about if Todd Vogel was suffering from significant impairment of motor skills, judgment, speech, balance and vision just prior to his death, such a conclusion cannot be given without violating **General Elec. Co. v. Joiner** Supra., with being a unfounded conclusion.

Based upon the plain language of Dr. Beeson's opinion he is conceding that he does not know if or to what extent alcohol may have been affecting Todd Vogel. Dr. Beeson concedes that without observing Todd Vogel or having specific information about Todd Vogel's motor skills, judgment, speech, balance, and vision prior to his death, Dr. Beeson is simply guessing that alcohol "**may"** have impaired him. Clearly, this opinion concedes that it is also possible that alcohol did not impair any of Todd Vogel's motor skills, judgment, speech, balance, and vision. Dr. Beeson was not

provided enough information to conclude if Todd Vogel's motor skills, judgment, speech, balance, and vision just prior to his death, was never provided information about what his drinking habits were, nor did Dr. Beeson have any information about any food consumed just prior to his death.

The most compelling fact that Dr. Beeson did not have when rendering this opinion was what happened that night under the water so there is no possible way Dr. Beeson can opine that it is **likely** that Todd Vogel's consumption of alcohol contributed to Todd Vogel's drowning and death.  Absent this information, it is entirely possible that Todd Vogel's accidental death had nothing to do with his consumption of alcohol.  For this reason this opinion is entirely unreliable, speculative and could prejudice the jury.

### Dr. Alan Weiner's Opinion

*"such a level [.128] would induce slower reaction times, impair judgment, altered sensory ability, and altered thought processes."*

*"**if it is known** whether a person chronically ingests alcohol, it is possible to estimate the effects that a particular level of alcohol would have on an individual"*

*"**it is more likely than not** that consumption of alcohol independently contributed to the drowning death of Todd Vogel"*

*"the effects of alcohol on a person with alcohol levels estimated for Todd Vogel could **potentially** affect the performance of a complex multi-step task, such as swimming to the bottom of a lake and trying to free an anchor that may have been stuck in the mud."*

Dr. Weiner's opinion concedes he is providing an objective opinion speaking generally about the effects of alcohol can have on a person, not the subjective affects alcohol may have had on Todd Vogel.  We know this is an objective opinion because Dr. Weiner next concedes that alcohol affects each person differently and therefore, it is helpful to know "whether" a person chronically ingests alcohol as that specific

information about a person can change from person to person. This establishes that Dr. Weiner just as Dr. Beeson has done, cannot opine as to if, or to what extent, alcohol may have been affecting Todd Vogel. Dr. Weiner is also guessing that alcohol "**may"** have impaired him.

Clearly, this opinion concedes that it is also possible that alcohol did not impair any of Todd Vogel's motor skills, judgment, speech, balance, and vision. Just like Dr. Beeson, Dr. Weiner just does not have enough information to conclude that Todd Vogel's motor skills, judgment, speech, balance, and vision were impaired. Dr. Weiner never met Todd Vogel, never was provided any information about Todd Vogel's motor skills, judgment, speech, balance, and vision just prior to his death, was never provided information about what his drinking habits were, nor did Dr. Beeson have any information about any food consumed just prior to his death. Dr. Weiner has no idea what happened that night under the water so there is no possible way Dr. Weiner can opine that it is "*it is more likely than not"* that Todd Vogel's consumption of alcohol contributed to Todd Vogel's drowning and death. This opinion is yet another conclusion which cannot be given without violating *General Elec. Co. v. Joiner* <u>Supra</u>., as being a unfounded conclusion.

## Dr. Benjamin Hatten's Opinion

"*the head injury suffered by Todd Vogel does **not render his consumption of alcohol irrelevant.**"*

"*blood alcohol concentrations at a level **similar** to Todd Vogel's level **would** cause a human to experience alterations in judgment and decision making capacity, worsened reaction time, and decline in motor function.*"

*"scientific literature reveals that the risk of death from drowning in recreational settings increases approximately **10-30 times** for subjects with blood alcohol concentrations of .100."*

*"**it is more likely than not** that alcohol was a cause in Todd Vogel's death."*

Dr. Hatten takes another approach in rendering his opinion, but unfortunately, this opinion is equally based upon speculation, assumption and guessing as to what happened to Todd Vogel the night he died. Dr. Hatten opined that "the head injury suffered by Todd Vogel does **not render his consumption of alcohol irrelevant**". However, Dr. Hatten could easily opined the opposite. Specifically, that the consumption of alcohol by Todd Vogel was entirely irrelevant because the blow to the head and face could have been the cause or contributing factor in Todd Vogel's death. Dr. Hatten has no idea what happened that night under the water so there is no possible way Dr. Hatten can opine that it is *"**it is more likely than not**"* that Todd Vogel's consumption of alcohol contributed to Todd Vogel's drowning and death. This establishes that Dr. Hatten, just as Drs. Beeson and Weiner had done, cannot opine as to if, or to what extent alcohol may have been affecting Todd Vogel. Dr. Hatten's opinion far more unreliable that Dr. Beeson and Dr. Weiner because this opinion claims Dr. Hatten knows that alcohol concentrations at a level **similar** to Todd Vogel's level **would** cause a human to experience alterations in judgment and decision making capacity, worsened reaction time, and decline in motor function." This self-serving paid for opinion ignores that Dr. Hatten just does not have enough information to conclude that Todd Vogel's motor skills, judgment, speech, balance, and vision were impaired. Dr. Hatten never met Todd Vogel, never was provided any information about Todd

Vogel's motor skills, judgment, speech, balance, and vision just prior to his death, was never provided information about what his drinking habits were, nor did Dr. Hatten have any information about any food consumed just prior to his death. Therefore, despite Dr. Hatten's mighty attempts to provide an subjective opinion that alcohol was affecting Todd Vogel, this opinion is exposed as simply an objective opinion that alcohol may have affected Todd Vogel. The point is that without observing Todd Vogel or having specific information about Todd Vogel's motor skills, judgment, speech, balance, and vision prior to his death, Dr. Hatten is also guessing that alcohol "**would"** have impaired him. Finally, based upon Dr. Hatten's literature regarding increased risk of drowning when alcohol is involved, obviously the increased risk statistics confirm that it remains entirely possible for an intoxicated person to drown and accidently die without alcohol causing or contributing to this persons death. Such statistics cannot be applied to Todd Vogel's death because no one, including Dr. Hatten know what happened to Todd Vogel.

**D.    Well Founded Law Requiring a Causal Connection between Alcohol and Death.**

Well founded legal authority requires that each of these expert opinions be stricken because speculation, conjecture, assumption and guessing that alcohol caused or contributed to Todd's death is not the legal standard. As detailed below, in order for each of Standard's expert's to render such opinions, each must establish that element **B** exists; i.e. that a causal connection exists where Todd Vogel just prior to entering the water was suffering some affect or affects of alcohol. Only then can an expert opine that such affect caused or contributed to his death because the expert can explain how

13

or to what extent his judgment, speech, motor skills, thinking, or behavior played some role in his death.

Colorado law requires that the predominant cause test applies to this case.   In *Equitable Life Assurance Society v. Hemenover*, 100 Colo. 231, 67 P.2d 80 (1937), the Colorado Supreme Court held that 'death by accident in Colorado is not restricted to cases in which the injury is initially incurred through accidental means. Rather, it applies as well to those situations in which an unusual or unanticipated result flows from a commonplace cause."

Other jurisdictions apply the same holding that Standard bears the burden to prove that some causal connection existed between alcohol and Todd Vogel's death. This conclusion is supported by decisions from other jurisdictions addressing accidental death insurance policies containing similar exclusionary clauses. See *Hastie v. J.C. Penney Life Insurance Co.,* 115 F.3d 895 (11th Cir.1997) (an accidental death insurance policy excluding coverage when the loss is "caused by or resulting from ... an injury occurring while the covered person is intoxicated" places the burden upon the insurance company to show some causal connection between the intoxication*41 and the insured's death); *Harris v. Carolina Life Insurance Co.,* 233 So.2d 833 (Fla.1970) (an accidental death insurance policy excepting liability when the death results "directly or indirectly, wholly or partially from ... bodily injury while under the influence of alcohol" imposes a burden upon the insurance company to show some causal relationship between the death and the intoxication before denying coverage); see also *Balthis v. AIG Life Insurance Co.,* 102 F.Supp.2d 668

14

(W.D.Va.2000) (group accident policy excluding "any loss caused in whole or in part by, or resulting in whole or in part from ... the Insured Person being legally intoxicated" prohibited recovery because death was caused "at least in part" by intoxication); *Riordan v. Commercial Travelers Mutual Insurance Co.*, 11 Wash.App. 707, 525 P.2d 804 (1974) (accidental death insurance policy's exemption for "any loss occurring or originating ... while he is intoxicated" did not apply where death was caused entirely by negligence of third party, because there was no causal connection between the alcohol and the death); G. Couch, *Couch on Insurance* § 143:84 (L. Russ & T. Segalla 3d ed.1998) ( "where a policy does not cover injuries received by the insured as the 'result' or 'in consequence' of being intoxicated, or 'caused' by intoxication, some causal connection must be shown").

## CONCLUSION

Because Standard never made any attempt to learn if Todd Vogel was suffering from specific effects of alcohol, Standard cannot meet its burden that alcohol that caused or contributed to his death.  Each opinion lacks the requisite foundation required by Federal Rules of Evidence 702 because Standard simply assumed by element **A** was present that it could jump to element **C** and deny the claim.

RESPECTFULLY SUBMITTED 11-5-14          INDERWISH & BONIFAZI, P.C.

                                        /s/
                                        Dan Bonifazi # 30645
                                        John H. Inderwish #10222
                                        *Attorneys for Plaintiff Vogel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, a true and correct copy of the foregoing **MOTION TO STRIKE EXPERT TESTIMONY PURSUANT TO F.R.E. 702** were served via *U.S. Mail* and *Electronic Mail*, addressed to:

Stacy A. Carpenter, Esq.
Thomas H. Wagner, Esq.
Polsinelli PC
1515 Wynkoop St., Ste. 600
Denver, CO  80202
scarpenter@polsinelli.com
twagner@polsinelli.com
*Attorneys for Defendant Standard Insurance Co.*

/s/ Justine Hearn                    *

*In accordance with C.R.C.P. 121 § 1-26(7) a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.