IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02472-CMA-MJW

ERIN VOGEL, Plaintiff,

vs.

STANDARD INSURANCE COMPANY, an
Oregon corporation, Defendant.

---

### STANDARD INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendant Standard Insurance Company ("Standard"), through counsel, submits this Reply in Support of its Motion for Summary Judgment (the "Motion"):

## I.   INTRODUCTION

Standard's Motion shows that application of the exclusion in Standard's Group Life Insurance Policy (the "Policy") for the voluntary consumption of alcohol was reasonable, fairly debatable, and not in bad faith.  Plaintiff's response fails to raise a dispute of material fact or to overcome the legal authorities that Standard presents, and thus, her bad faith claim should be dismissed.

Plaintiff misses the distinction between a breach of contract action and bad faith.  The issue before the Court in the Motion is not whether Standard made a correct claim decision, but whether Standard acted in bad faith.

Plaintiff's arguments consistently conflate these two issues.  Plaintiff disputes whether alcohol caused or contributed to Decedent's accident or loss; but, the cause of the accident or loss is irrelevant to the issue of bad faith.  Instead, the inquiry about bad

faith is appropriately focused on whether Standard acted reasonably when reaching its conclusions. Even if Plaintiff is correct about the cause of the accident and Standard's conclusion was wrong, that does not mean that Standard acted in bad faith.

Plaintiff also dismisses the differences between Standard's Policy language and the policy language in cases she relies upon and she suggests that the Court should overlook "subtle differences in policy language." The differences, however, are not subtle. In fact, the differences are exactly what distinguish the facts of this case from those cases that Plaintiff posits as persuasive.

Thus, for the reasons below and in the Motion, summary judgment should enter and Plaintiff's bad faith claim should be dismissed as a matter of law.

## II. REPLY CONCERNING UNDISPUTED FACTS[1]

7.     Plaintiff's citations to the deposition do not contradict that the boating party, including Decedent, drank alcohol on the boat. In the portion cited, Plaintiff states only that she did not know what Kimberly Watrous was drinking. Plaintiff acknowledges that Janessa and Andy Dewett, as well as Trevor Watrous, were drinking alcohol on the boat. (Vogel Dep. at 31:17-34:9.) The fact that Ms. Watrous was also drinking alcohol is established by the testimony of her husband, Mr. Watrous. (**Ex. 14,** Watrous Dep. at 34:4-13.)

8.     The portions of Plaintiff's deposition cited do not contradict the fact that Decedent drank a shot of tequila and beer while on the boat. In the portion cited, Plaintiff states only that she did not know if the Decedent drank something other than

---

[1] Per D.C.COLO.LCivR 56.1 and CMA Civ. Practice Standard III.G.7, Standard will reply only to those facts disputed by Plaintiff in her Response.

beer.  (Vogel Dep. at 21:7-9.)  The fact that Decedent had a shot of tequila is established by the testimony of Mr. Watrus.  (See **Ex. 6,** Watrous Dep. at 34:21-36:4.)

9.      Plaintiff does not dispute the content of the Sherriff's report but argues that it is hearsay.  For purposes of this Motion, the Sheriff's report is not offered for the truth of the matter asserted.  Rather, it is offered to show the effect on the reader, Standard, who relied on the contents of the report in investigating Plaintiff's claim for benefits.[2]

12.     The undisputed evidence from Plaintiff's deposition, the police reports, and Mr. Watrous' deposition show that: (a) Ms. Dewett suggested cutting the anchor line; and (b) Decedent rejected that suggestion and decided to swim down the anchor line.  (**Ex. 15,** Vogel Dep. at 40:8-25; **Ex. 1**, Attachment 3 to Clark Aff., Sheriff's Report, Bates No. STND 13-01951-00256; **Ex. 6,** Watrous Dep. at 51:11-52:2.)  Even if Plaintiff could establish a dispute regarding this fact, it is not material to this Motion.

13.     Plaintiff disputes the location of the boat, but Mr. Watrous located the boat on a map in the middle of the lake.  (**Ex. 16**, Deposition Ex. 40, **Ex. 14** Watrous Dep. at 30:14-33:23.)  Sheriff's investigators also noted that the boating party reported to 911 emergency "that the male has been under water for about five minutes **and they are in the middle of the lake**."  (**Ex. 1**, Attachment 4 to Clark Aff., Offense Report, Bates No. STND 13-01951-474 (emphasis added).)

---

[2] Even if offered for the truth of the matter asserted, the investigator's reports are covered by the business records exception and the hearsay exception for legally authorized investigations.  See Fed. R. Evid. 803(6) & 803(8); see also Bedford Internet Office Space, LLC v. Travelers Casualty Ins. Co., 2014 WL 4230315, *5 (N.D. Tex. Aug. 25, 2014) (overruling objection to admission of police reports in insurance bad faith action).

14.    Standard does not mischaracterize the report.  The report states: "RP advised that they have had a few beers . . . ." (**Ex. 1**, Attachment 4 to Clark Aff., Offense Report, Bates No. STND 13-01951-474; *see also* **Ex. 1**, Attachment 3 to Clark Aff., Notes, Bates No. STND 13-01951-259 ("Drinking (everyone).").)  Regarding Plaintiff's hearsay objection, see supra ¶ 9 and n. 2.

15.    Plaintiff disputes whether the Park Ranger was correct, but Plaintiff cannot, and does not, dispute that the Park Ranger reported:  "As I got close to the boat, I noticed a strong odor of alcohol beverage coming from the boat." (**Ex. 8**, State of Colorado Case Report at Bates No. Vogel 000533.)  Plaintiff also provides no evidence to contradict the statement in the report.  Neither the Clark nor the Urfer depositions contradict Park Ranger Seel's statement.

16.    The affidavits of Investigators Garnsey and Gordanier are clear and Plaintiff has provided no evidence from the record to rebut them.  (**Ex. 4**, Garnsey Aff. ¶ 3; **Ex. 5**, Gordanier Aff. ¶ 3.)[3]

17.    The Sheriff's Report states: "I observed several plastic cups strewn about the interior of the boat as well as a can of Keystone beer **in a cupholder at the back of [the boat]**." (**Ex. 1**, Attachment 4 to Clark Aff., Offense Report, Bates No. STND 13-01951-475 (emphasis added).)  Plaintiff offers no evidence to dispute this report.

_____

[3] This fact is also supported by the Sheriff's reports.  (*See* **Ex. 1**, Attachment 3, Sheriff's Report, Bates No. STND 13-01951-256-257 ("gave ERIN VOGEL, ANDY DEWETT, JANESSA DEWETT, TREVOR WATROUS and KIMBERLY WATROUS a ride back to 5852 South Yampa Street . . . ."); Bates No. STND 13-01951-268 ("this Investigator drove ANDY and JENESSA to their residence at 5852 South Yampa Street"); Attachment 4 to Clark Aff., Offense Report, Bates No. STND 13-01951-474 ("Most parties on the boat appeared intoxicated and very emotional.").)

19.     Sarah Urfer's testimony is not taken out of context.  Ms. Urfer testified: "Q: And would it be fair to say that given Mr. Vogel's blood-alcohol level, that at the point in time when Mr. Vogel entered the water, he was intoxicated?  A: Correct."  (**Ex. 9**, Urfer Dep. at 23:2-6.)  Ms. Urfer confirmed that opinion several times in her deposition.  (**Ex. 17**, Urfer Dep. at 28:2-10; 53:23-54:11; 66:25-67:5.)

20.     Ms. Urfer's testimony is not taken out of context.  Ms. Urfer testified as follows:  "The last sentence in that paragraph says, 'In this case, the decedent's alcohol level was sufficiently high that we can conclude he was likely experiencing the clinical effects of ethanol intoxication at the time of his death.'"  A: Correct.  Q:  And you would agree with that?  A.  Yes, as stated previously."  (**Ex. 9**, Urfer Dep. at 66:25-67:5.)  Ms. Urfer confirmed that opinion several times in her depositions.  **Ex. 17**, Urfer Dep. at 23:2-6; 28:2-10; 53:23-54:11; 66:25-67:5.)

21.     Plaintiff states that this fact is disputed but she provides no evidence from the record to establish a dispute.  Ms. Urfer testified extensively to the existence of the chart, she reviewed the chart during her deposition, and she explained that the chart shows "the general effects of alcohol and the stages of the impact of alcohol on the human body."  (**Ex. 9**, Urfer Dep. at 15:8-15:17.)

22.     Ms. Urfer's testimony is not taken out of context.  She testified:  "Q:  So Mr. Vogel, given his blood-alcohol level, would be classified at the excitement state?  A: Correct.  Q:  And the excitement stage as you've put in your report here on page 1, at that stage, 'A person may exhibit emotional instability, increased reaction time, sensory

motor incoordination, impaired balance, slurred speech, vomiting and drowsiness'; is that correct?  A: Yes."  (**Ex. 9**, Urfer Dep. at 19:25-20:12.)

23.     Ms. Urfer's testimony is not taken out of context.  Ms. Urfer testified:  "As well as you would add euphoria?  A:  Right.  Q:  Is euphoria a stage below excitement?  A: Yes.  Q:  And does it have terms?  A:  It does.  Q:  Could you read those to us?  A:  I can. So euphoria is the stage.  It's from .03 to a .12.  And just so that we're clear, the excitement stage also has a range, and it was a .09 to a .25. * * * So the euphoria list is euphoria, sociability, talkativeness, increased self-confidence, decreased inhibitions, diminished attention, judgment and control, some sensory motor incoordination, slow information processing, loss of efficiency in critical performance tests."  (**Ex. 9**, Urfer Dep. at 24:13-25:5.)

25.     Plaintiff does not dispute that investigators interviewed witnesses at the scene and Plaintiff does not dispute that investigators reached the conclusion that alcohol contributed to the accident.  (**Ex. 4**, Garnsey Aff. ¶ 6; **Ex. 5**, Gordanier Aff. ¶ 7.) Rather, Plaintiff disputes the actual conclusion.  The issue is not, as Plaintiff believes, whether the Sheriff's investigators were correct in their conclusion.  The issue is whether Standard was reasonable in relying on the evidence in the claim file when it applied the exclusion.

26.     Plaintiff does not dispute that the Park Ranger concluded that alcohol was a contributing factor to the accident.  (**Ex. 10**, Boating Accident Report Form at Bates No. Vogel 000558.)  Rather, Plaintiff disputes the actual conclusion.  Again, the issue is

not whether the Park Rangers were correct.  The issue is whether Standard was reasonable in relying on the evidence in the claim file when it applied the exclusion.

31.     Plaintiff does not dispute that Dr. Steven Beeson concluded that alcohol likely caused or contributed to the Decedent's death.  Rather, Plaintiff disagrees with Dr. Beeson's assessment that alcohol affected Decedent.  (**Ex. 1**, Attachment 10 to Clark Aff., Beeson Report, Bates No. STND 13-01951-00227 – 228.)  Again, the issue is not whether Dr. Beeson was correct.  The issue is whether Standard was reasonable in relying on the evidence in the claim file when it applied the exclusion.

37.     Plaintiff does not dispute that Dr. Alan Weiner concluded that it was more likely than not that the consumption of alcohol was an independent contributor to Decedent's drowning death.  (**Ex. 1**, Attachment 16 to Clark Aff., Weiner Report, Bates No. STND 13-01951-00164.)  Rather, Plaintiff disputes Dr. Weiner's underlying opinion.  Again, the issue is not whether Dr. Weiner was correct.  The issue is whether Standard was reasonable in relying on evidence in the claim file when it applied the exclusion.

38.     Plaintiff does not dispute that Dr. Weiner concluded that Decedent's level of intoxication would have impacted Decedent in certain ways.  Rather, Plaintiff disputes Dr. Weiner's assessment.  (**Ex. 1**, Attachment 16 to Clark Aff., Weiner Report Bates No. STND 13-01951-00166.)[4]  Again, the issue is not whether Dr. Weiner's conclusion was correct.  The issue is whether Standard was reasonable in relying on evidence in the claim file when it applied the exclusion.

_____

[4] Plaintiff's suggestion that Standard hopes to discredit Plaintiff's friends or smear their reputations is unfounded, unsupported, and improper.

39.     Plaintiff admits that Dr. Weiner concluded that it is possible to make an estimate regarding the effects that a given level of BAC would be expected to have on an individual and that he concluded what effects alcohol would have had on Decedent. (**Ex. 1**, Attachment 16 to Clark Aff., Weiner Report Bates No. STND 13-01951-00164, 166.)  Plaintiff's dispute is about Dr. Weiner's actual conclusion.  Again, the issue is not whether Dr. Weiner was correct.  The issue is whether Standard was reasonable in relying on the evidence in the claim file when it applied the exclusion.

40.     Plaintiff's response states that "the doctor's opinion is not disputed, but the validity of opinion is in factual dispute."  Thus, by Plaintiff's own admission, there is no dispute.  (**Ex. 1**, Attachment 17 to Clark Aff., Statements, Bates Nos. STND 13-01951-00381 & 382.)[5]

41.     While Plaintiff states that there is a dispute she does not present one. She does not dispute that Standard sent the letter and she does not dispute the content of the letter.  (**Ex. 1**, Attachment 18 to Clark Aff., Letter, Bates No. STND 13-01951-00112.)

### III.     RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS

1.     Disputed.  Standard did interview the coroner.  Rob Clark spoke with the coroner on December 14, 2012, and December 28, 2012.  (**Ex. 1**, Attachment 9 to Clark Aff., Claim Log, Bates No. STND 13-01951-52.)  Further, there is absolutely no basis for Plaintiff's statement that the coroner rendered an "opinion that alcohol did not contribute

---

[5] Plaintiff's Response is mis-numbered here in that Plaintiff's paragraph 40 in Plaintiff's Response appears to respond to paragraph 39 in Standard's Motion.  This reply will track the original numbering in the Motion.

8

to Todd Vogel's death."

2.    Undisputed that Standard did not interview the Plaintiff.

3.    Undisputed that Standard did not interview the other boat passengers. Standard considered the contemporaneous interviews of the boating party conducted by the Sheriff's office as well as the written statements from the boating party submitted by Plaintiff's attorneys.

4.    Disputed, in part.  To say that Decedent was "lucid" and "coordinated" misrepresents the record.   The deponent, Mr. Watrous, never used those words. Undisputed to the extent that Decedent had been swimming earlier in the day, that Decedent discussed freeing the anchor with Mr. Watrous, and that Decedent descended the anchor line and freed the anchor.  (**Ex. 14**, Watrous Dep. at 56:4-9.)

5.    Disputed.   Standard sent Plaintiff two letters explaining its decision. The second letter states, in part:

> the documentation supports [the Decedent] had consumed enough alcohol that it would have reasonably affected him physiologically (such as in reaction times and sensory ability) and cognitively (altered thought processes, impaired judgment and the ability to carry out multi-step processes). Mr. Vogel may have been a strong swimmer and an athlete, but the documentation of the events of that evening show his judgment and thought processes were impaired when he chose to jump into very cloudy/murky water when it was dark after he had been drinking in order to free an anchor that may have been stuck in the mud.

(**Ex. 1**, Attachment 18 to Clark Aff., Letter, Bates No. STND 13-01951-00112.)

6.    Disputed to the extent the statement mischaracterizes the testimony.  Mr. Clark testified that Decedent's conduct was part of the entire context of the claim.  (**Ex. 18,** Clark Dep. at 34:17 ("I look at the entire context of the claim").)

7.     Disputed because this mischaracterizes the testimony.  Mr. Clark testified that they had not made direct observations.  "Q: Now, the first responders have no notes at all concerning Mr. Vogel and his conduct, do they, other than he entered the water?  A:  That's correct.  They have no – they have no direct observations." (Clark Dep. at 123:5-9.)  However, Mr. Clark testified several times that there is information in the reports about Decedent's consumption of alcohol and level of intoxication.  (**Ex. 18,** Clark Dep. at 12:10-22, 75:24-76:22, 112:19-113:2, 121:11-122:6; **Ex. 1**, Attachment 3 to Clark Aff., Sheriff's Report, Bates No. STND 13-01951-254.)

8.     Disputed because this mischaracterizes the testimony.  Mr. Clark testified that Standard denied the claim because Standard's investigation showed that Decedent would have experienced a loss of judgment, among other factors, due to his consumption of alcohol.  (**Ex. 18,** Clark Dep. at 121:11-122:6, 130:10-131:9.)

9.     Undisputed.

10.     Undisputed.   Dawn Schonberg testified that it was not necessary to interview additional witnesses because nothing in Standard's investigation had led Standard to believe that the police reports were not accurate.  (**Ex. 19,** Schonberg Dep. at 14:19-15:4.)

11.     Undisputed.

12.     Undisputed.

13.     Disputed because it mischaracterizes the testimony.   Ms. Schonberg testified: "Q:  But it is not the insured's burden to establish that alcohol didn't cause the death?  A:  Yeah, I don't know whose burden it is.  Q: You don't?  A:  Well, I'm looking

at what's reasonable and what's the documentation that I have.  Quite honestly I don't know it is my burden to determine that it didn't' or if it is your burden to determine that it didn't." (**Ex. 19,** Schonberg Dep. at 77:18-78:4.)

## IV.      REPLY

## A.      PLAINTIFF MISCONSTRUES THE LAW OF BAD FAITH.

Plaintiff acknowledges that she must show that Standard acted unreasonably and that Standard knew its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.  (See Response at 18 (citing Sanderson v. Am. Fam. Mut. Ins. Co., 251 P.3d 1213, 1217 (Colo. App. 2010).)   Plaintiff proceeds, however, to misapply the law of bad faith in multiple ways.

### 1.      Courts Can and Do Grant Summary Judgment on Bad Faith Claims.

Plaintiff first asserts that the Court cannot grant summary judgment on her bad faith cause of action because the element of reasonableness is a jury question.  Plaintiff is wrong.

Courts can and do grant summary judgment dismissing bad faith claims when, as here, the undisputed facts show that the insurer did not act unreasonably.  See, e.g., Sanderson, 251 P.3d at 1218 (affirming summary judgment in favor of insurer); Wausau Bus. Ins. v. U.S. Hotels Mgmt., Inc., 341 F. Supp. 2d 1180, 1186 (D. Colo. 2004) (granting summary judgment in favor of insurer on bad faith claim); Windsor Court, LLC v. Am. Fam. Mut. Ins. Co, 2013 WL 799589, *3 (D. Colo. Mar. 5, 2013) ("In appropriate circumstances, however, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law.") (quotations and citation omitted).

2.      Plaintiff Misapprehends the Test for Bad Faith.

While Plaintiff acknowledges the elements of bad faith, presumably because there is no factual dispute and it is clear that this case was fairly debatable, Plaintiff ignores the test for bad faith and focuses instead on whether Standard's decision to apply the exclusion was correct rather than on whether Standard acted unreasonably. In order to succeed on her bad faith cause of action, Plaintiff must show that Standard acted unreasonably and that Standard knew its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.  Sanderson, 251 P.3d at 1217.

The issue before the Court is whether the undisputed facts show that Standard acted unreasonably, regardless of whether Standard's ultimate determination was correct.  As the Colorado Court of Appeals stated in Zolman v. Pinnacol Assurance, "even if an insurer possesses a mistaken belief that a claim is not compensable, it may be within the scope of permissible challenge."  261 P.3d 490, 497 (Colo. App. 2011); see also Sanderson, 251 P.3d at 1217 (noting that insurer can act reasonably even if reaching the wrong conclusion).

When the undisputed facts show that an insurer challenges a claim that was fairly debatable, those facts weigh against a finding of bad faith and in favor of summary judgment.  See Vaccaro v. Am. Family Ins. Grp., 275 P.3d 750, 759-60 (Colo. App. 2012) ("if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably."); Zolman, 261 P.3d at 497 ("Under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'").  Indeed, the

landmark insurance case of <u>Travelers Ins. Co. v. Savio</u>, made it clear that insurers may challenge claims that are fairly debatable without subjecting themselves to liability for bad faith.  <u>See</u> 706 P.2d 1258, 1275 (Colo. 1985) (quoting <u>Anderson v. Continental Ins.</u>, 271 N.W.2d 368, 377 (Wis.1978)).

Here, Plaintiff disputes Standard's ultimate conclusion that alcohol caused or contributed to Decedent's accident or death.  Yet in disputing Standard's conclusion, Plaintiff misapprehends the distinction between an insurer making an incorrect decision, which is not bad faith, and an insurer acting unreasonably with knowledge or disregard of its unreasonableness, which is bad faith.  <u>See Zolman</u>, 261 P.3d at 497; <u>Sanderson</u>, 251 P.3d at 1217; <u>see also</u> Motion at 14-15 & n.3 (citing <u>Thompson v. United States Fidelity & Guaranty Co.</u>, 559 N.W.2d 288, 292 (Iowa 1997) and noting that the question is whether the application of intoxication defense is fairly debatable, not whether intoxication caused the accident that gives rise to claim).

      3.    <u>There is No Material Dispute and Standard Did Not Act in Bad Faith.</u>

As Standard shows in the Motion, Plaintiff cannot prove Standard acted in bad faith because the undisputed facts show Standard's application of the exclusion was reasonable and Standard did not knowingly or recklessly disregard the validity of Plaintiff's AD&D claim.  <u>See, e.g., Pham v. State Farm Mut. Auto. Ins. Co.</u>, 70 P.3d 567, 572 (Colo. App. 2003) (affirming summary judgment for insurers on bad faith claim when insurers had a reasonable belief they were not obligated under the applicable statute to pay benefits during the pendency of a related case); <u>see also Savio</u>, 706 P.2d at 1275.

In her Response, Plaintiff does not dispute that when Standard applied the exclusion it relied on information in the Sheriff's reports, which included witness statements, the toxicology report, and doctors' reports.  Plaintiff also does not dispute that those documents state that the members of the boating party, including Decedent, had been drinking, that there was beer and tequila on the boat, that Decedent's BAC was more than 150% of the legal limit for drivers and boat operators in Colorado, and that members of the boating party were noticeably intoxicated when first responders arrived.  Plaintiff further does not dispute that the doctors' reports agree that it is possible to make an estimate regarding the effect that a given level of ethanol would have on an individual; that at Decedent's level alcohol would have impacted the Decedent's reaction times, thought processes, motor skills, and judgment; and that alcohol caused or contributed to Decedent's accident or death.

Instead, Plaintiff asserts that the Sheriff's investigators and medical doctors were wrong.  Put another way, Plaintiff suggests that it was bad faith for Standard to rely on trained Sherriff's investigators and licensed physicians.  Not surprisingly, Plaintiff fails to cite any legal authorities to support that suggestion.  The crux of Plaintiff's response is that Standard should have interviewed the other members of the boating party.  But Plaintiff does not dispute that Sheriff's investigators interviewed the other members of the boating party and that Standard considered those interviews.  Plaintiff also does not dispute that she submitted statements from the other members of the boating party and that Standard considered those statements.  Plaintiff simply argues that it was bad faith for Standard not to have conducted its own interviews of those witnesses.  This circuit

has already rejected a similar argument.  <u>See, e.g., Roberts v. State Farm Mut. Auto. Ins. Co.</u>, 2003 WL 1559155, **3 (10th Cir. Mar. 26, 2003) (affirming dismissal of bad faith action when insurer declined to interview insured's doctor and instead relied on written records to deny claim).  Plaintiff's case is, in essence, that Standard should have rejected information obtained the night of the accident by trained Sherriff's investigators and the opinions of licensed physicians, and instead should have relied on after-the-fact statements from Decedent's friends and widow who were on the boat and who had also consumed alcohol.  Standard's reliance on the collective reports of investigators and medical opinions does not establish bad faith and Plaintiff's position does not, as a matter of law, support a bad faith claim.

Plaintiff's response also ignores the testimony of her own toxicology expert witness, Ms. Urfer, who agrees that Decedent was intoxicated when he entered the water; that alcohol would have had an effect on him; and that his BAC was sufficiently high that Standard could reasonably conclude that he was likely experiencing the clinical effects of intoxication when he died. (Motion at SOF ¶ 19, 20.)  Plaintiff's expert testified that although she does not know exactly what happened in the water that night, she agrees that "it's possible" that Decedent's decision to swim down and free an anchor at night while drinking was the result of his "impaired judgment."  (Motion at SOF ¶ 24.)  Thus, although Plaintiff's expert may dispute whether there is sufficient evidence to reach the ultimate conclusion that alcohol caused or contributed to the Decedent's accident or death, it is clear that any disagreement is reasonable; that the claim was fairly debatable; and that Standard did not act unreasonably.

15

**B.    CASE LAW CONCERNING APPLICATION OF THE ALCOHOL EXCLUSION.**

Plaintiff focuses much of her response on case law regarding the application of policy exclusions.   First, and most significantly, all of the cases that Plaintiff cites address whether an insurer reached the correct conclusion in applying an exclusion. They do not address whether an insurance company's application of an exclusion was unreasonable or in bad faith.  Thus, none of the cases Plaintiff cites defeat this Motion.

Second, Plaintiff fails to address Sylvester v. Liberty Life Ins. Co., 42 P.3d 38, 40-41 (Colo. App. 2001) (cited in Motion at 17).  Sylvester states that an alcohol exclusion will apply when an insurer can show some causal connection between alcohol and the accident or loss.  See id.

Third, Plaintiff casually dismisses the issues discussed in the Motion that make Kellogg v. Metropolitan Life Ins. Co., 549 F.3d 818 (10th Cir. 2008) inapplicable. Plaintiff does not address the fact that Kellogg arises under ERISA and does not address whether the insurer's conduct was unreasonable.  Kellogg, 549 F.3d at 819. Plaintiff does not address the fact that Kellogg only considered whether the loss was **caused** by the seizure and did not address whether the loss was **contributed** to by the seizure.  Id.[6]

And, most critically, Plaintiff dismisses the significant distinction between the language of the illness exclusion in Kellogg and the alcohol exclusion here as being "subtle" and thus unimportant.  That difference is that the exclusion here applies to both the "Loss" and the "accident."  The exclusion in Kellogg only applied to the loss.  That

---

[6] The reason the Court in Kellogg did not consider the "contributed to" language is explained in footnote 5 of the Motion.

distinction controlled the result in <u>Kellogg</u>.  As <u>Kellogg</u> noted, the "Plan does not contain an exclusion for losses due to **accidents** that were caused by physical illness, but rather excludes only **losses** caused by physical illness."  <u>See</u> 549 F.3d at 832 (emphasis added); <u>see also Johnson v. Life Invs. Ins. Co. of Am.</u>, 98 Fed. Appx. 814, 818 (10th Cir. May 27, 2014)[7] (cited in <u>Kellogg</u>); <u>Pavicich v. Aetna Life Ins. Co.</u>, 2010 WL 384733, *10 (D. Colo. Sept. 27, 2010) (cited in Motion at 18.).   In contrast, Standard's Policy states that a benefit is not payable if the "accident or Loss is caused or contributed to by . . . the voluntary use or consumption of any poison, chemical compound or drug, unless used or consumed according to the directions of a Physician."

Fourth, Plaintiff cites <u>LaAsmar,</u> also an ERISA case that does not address bad faith, and does not address an alcohol exclusion.  <u>LaAsmar</u> addressed the coverage grant and the requirement that the accident be the "sole cause of the injury" and the "sole cause of the covered loss." 605 F.3d at 801-02.  It does not apply here.

Fifth, Plaintiff cites <u>Capone v. Aetna Life Ins. Co.</u> 592 F.3d 1189 (11th Cir. 2010). <u>Capone</u>, is another ERISA case, <u>id.</u> at 1192, and like the policy in <u>Kellogg</u>, the exclusion in <u>Capone</u> only applied if alcohol caused or contributed to a "loss."  <u>Id.</u> at 1200.  Further, in <u>Capone</u>, there was a factual dispute regarding the insured's BAC at the time of the

---

[7] The Tenth Circuit's discussion in <u>Johnson</u> is particularly instructive.  The exclusion in <u>Johnson</u>, like the exclusion in <u>Kellogg</u>, applied only to a "loss" under the policy.  98 Fed. Appx. at 818.  <u>Johnson</u> held that "coverage is denied under this policy only where the illness causes the hospitalization and death, e.g., heart attack leading to death, and not where the illness causes an accident that causes the death, e.g., a mild heart attack while driving leading to a fatal car accident."  <u>Id.</u>  <u>Johnson</u> explained, however, that if the insurer wanted to exclude coverage where an **accident** rather than a "**loss**" was caused by sickness or infirmity, the insurer could draft an exclusion to include the word "accident."  <u>Id.</u>

accident.  Id.  That factual dispute does not exist here.

## V.      CONCLUSION

Plaintiff's Response depends almost entirely on argument of counsel and not facts in the record.   Indeed, Plaintiff has put forth no evidence that would permit a reasonable jury to find in Plaintiff's favor on her bad faith cause of action.   Plaintiff also misapprehends the law of bad faith and asks the Court to apply an incorrect test for determining bad faith.   Thus, for the reasons above and in the Motion, Plaintiff's claim for bad faith should be dismissed as a matter of law.

DATED this 17th day of November, 2014.

Respectfully Submitted,

Polsinelli PC

_s/Thomas H. Wagner_
Stacy A. Carpenter, Esq.
Thomas H. Wagner, Esq.
Joseph T. VanLandingham, Esq.
1515 Wynkoop St., Ste. 600
Denver, CO  80202
303-572-9300
scarpenter@polsinelli.com
twagner@polsinelli.com
jvanlandingham@polsinelli.com
*Attorneys for Defendant Standard Insurance Co.*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly served this 17th day of November, 2014 to each of the following:

| | | |
|---|---|---|
| John H. Inderwish | ( ) | via U.S. Mail |
| Daniele W. Bonifazi | ( ) | via Hand Delivery |
| Inderwish & Bonifazi, P.C. | ( ) | via E-Mail |
| 1873 S. Bellaire Street, Suite 1401 | ( ) | via Overnight Mail |
| Denver, CO 80222 | (x) | via CM/ECF |

*Counsel for Plaintiff*

*s/Thomas H. Wagner*
Thomas H. Wagner