IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02472-CMA-MJW

ERIN VOGEL,

    Plaintiff,

vs.

STANDARD INSURANCE COMPANY, an
Oregon corporation

    Defendant.

---

**STANDARD INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY**

---

Defendant Standard Insurance Company ("Standard"), through counsel, submits the following response in opposition to the Motion to Strike Expert Testimony Pursuant to F.R.E. 702 (the "Motion") filed by Plaintiff Erin Vogel ("Plaintiff"):

## **INTRODUCTION**

Plaintiff's Motion should be denied. The crux of this case is Standard's application of an exclusion to coverage in a group life insurance policy. The exclusion states no accidental death and dismemberment ("AD&D") benefit is payable if either the "accident or loss" resulting in the claim was "caused or contributed to" by "the voluntary use or consumption of any . . . alcohol or drug." In investigating whether the exclusion applied to Plaintiff's AD&D claim, Standard consulted with two medical experts, one board certified in internal medicine and one with expertise in medical toxicology and

emergency medicine.  During the course of this lawsuit, Standard retained another doctor specializing in toxicology.  Each of Standard's three medical experts may testify on toxicology and in particular, the effects, if any, that alcohol would have had on Todd Vogel ("Decedent") on the night of the accident.

Plaintiff seeks to strike all three of Standard's medical experts, but she focuses on the wrong issue because her dispute with Standard's application of the exclusion to her AD&D claim does not affect whether Standard's toxicology experts used reliable methods in reaching their expert opinions.  Standard's toxicology experts used well-accepted, reliable, scientific methods, and numerous courts have already rejected the types of challenges Plaintiff raises in this Motion.  Indeed, the challenges Plaintiff raises to Standard's toxicology experts go to the weight that a fact finder may give the testimony, and not to admissibility of the testimony.  Moreover, Plaintiff has already stipulated to the admission of two of the three expert opinions because those opinions are contained within Standard's claim file and thus, are necessary for Standard's defense to Plaintiff's bad faith claim.

## **FACTUAL BACKGROUND**

Decedent died in a boating accident at Cherry Creek Reservoir on August 25, 2012.  Plaintiff filed for life insurance benefits and AD&D benefits under an insurance policy issued by Standard.  Standard immediately paid the $200,000 life insurance benefit and began an investigation into whether to pay the AD&D benefit.  Standard obtained the death certificate, sheriff's reports, autopsy report, and toxicology report to investigate Plaintiff's claim.  The toxicology report stated that Decedent's blood alcohol

concentration ("BAC") was 0.128, more than 50% above the legal limit for boat operators in Colorado. The sheriff's reports also stated that the boating party, including Decedent, had consumed alcohol, described evidence of alcohol consumption found on the boat, referenced Decedent's level of intoxication, and advised that the five other members of the boating party were noticeably intoxicated when first responders arrived.

Since Standard's initial investigation showed Decedent had been drinking and was in fact intoxicated, Standard obtained a medical opinion on what role, if any, alcohol played in the accident or death. Dr. Steven Beeson concluded it was likely that alcohol caused or contributed to Decedent's accident or death because a person with a BAC like the Decedent's would experience a lack of judgment and loss of motor skills. (**Exhibit 1**, Physician Consulting Memo by Dr. Steven Beeson.) After receiving and relying on Dr. Beeson's medical opinion, Standard denied the AD&D claim.

When Plaintiff disagreed with Standard's decision, Standard completed a second-level review of Plaintiff's claim. As part of the second-level review, Standard obtained an independent medical opinion from a toxicology specialist, Dr. Alan Weiner, who agreed with Dr. Beeson that alcohol caused or contributed to the accident or death. (**Exhibit 2**, Independent Medical Review by Dr. Alan Weiner.) In his independent review, Dr. Weiner opined that because of his BAC, Decedent would have experienced a lack of judgment and loss of motor skills. Standard upheld its earlier decision to deny AD&D benefits.

Plaintiff filed this lawsuit in August 2013. Discovery has further confirmed Standard's position. The report from the park rangers who arrived first at the boat that

night states there was a strong odor of alcohol coming from the boat and the report identifies alcohol use as a contributing factor to the accident. (**Exhibit 3**, State of Colorado Case Report at Bates No. Vogel 000533; **Exhibit 4**, Boating Accident Report Form at Bates No. Vogel 000558.) Sheriff's investigators provided affidavits affirming that the other members of the boating party were intoxicated and too drunk to drive home, and that Decedent's consumption of alcohol contributed to the accident. (**Exhibit 5**, Garnsey Aff. ¶¶ 3, 6, 10; **Exhibit 6**, Gordanier Aff. ¶¶ 3, 7, 8.) Deposition testimony of another member of the boating party confirmed that Decedent consumed both tequila and beer while on the boat. (**Exhibit 7,** Deposition of T. Watrous at 34:21-36:4.) And the deposition of Plaintiff's toxicology expert, Sara Urfer, establishes that: (1) Decedent was intoxicated when he entered the water; (2) alcohol would have had an effect on him; and (3) it was reasonable for Standard to conclude that the Decedent was experiencing the clinical effects of alcohol intoxication at the time of his death. (**Exhibit 8**, Deposition of S. Urfer ("Urfer Dep.") at 23:2-6; 66:25-67:5.)

As part of this litigation, Standard retained another toxicology specialist, Dr. Benjamin Hatten, who also concluded that alcohol contributed to Decedent's accident and death. (**Exhibit 9**, Report of Benjamin Hatten.) Like Drs. Beeson and Weiner, Dr. Hatten relied on voluminous medical research describing the effects of alcohol on humans. (**Exhibit 9**, Report of Benjamin Hatten.) Dr. Hatten concluded that as a result of his BAC at the time of his death, Decedent would have suffered "alterations in judgment and decision making capacity, worsened reaction time, and a decline in motor function." (**Exhibit 9,** Report of Benjamin Hatten at 4.)

4

## **LEGAL STANDARDS**

Rule 702 governs the admissibility of expert witness evidence. See generally Daubert v. Merrell Dow Pharmaceuticals., Inc., 509 U.S. 579 (1993). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Fed. R. Evid. 702, district courts act as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. "This is not, however, a role that emphasizes exclusion of expert testimony." Cary v. Automobile Ins. Co. of Hartford, 838 F. Supp.2d 1117, 1122 (D. Colo. 2011); see also Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006). "A key but sometimes forgotten principle of Rule 702 and Daubert is that Rule 702, both before and after Daubert, was intended to relax traditional barriers to admission of expert opinion testimony." Cook, 580 F. Supp. 2d at 1082.

District courts should first determine whether an expert witness is qualified, and then whether the opinions are relevant and reliable. See Fed. R. Evid. 104(a) & 702; Daubert, 509 U.S. at 593. Courts should also balance the issues of reliability and relevancy with the possible undue prejudice that may result from the admission of evidence at trial. See Daubert, 509 U.S. at 595. Under Fed. R. Evid. 403, the Court

5

can only exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

## ANALYSIS

**I.   PLAINTIFF MISSTATES THE SCOPE OF THE ALCOHOL EXCLUSION AND THE TEST FOR ADMISSIBILITY OF EXPERT TESTIMONY**

Initially, Plaintiff does not dispute the qualifications of Standard's experts. Indeed, all three experts are trained medical doctors with years of experience. (See **Exhibits 10 - 12**, Curricula Vitae of Drs. Beeson, Weiner, and Hatten.) Thus, all three experts have the "knowledge, skill, experience, training, or education" to qualify them as toxicology experts. Fed. R. Evid. 702.

Plaintiff also does not allege that the opinions of Drs. Beeson, Weiner, and Hatten are irrelevant or unfairly prejudicial. Instead, Plaintiff challenges the methods used by Drs. Beeson, Weiner, and Hatten, but the whole premise of Plaintiff's Motion is flawed because she confuses the test for whether Standard properly applied the alcohol exclusion with the test for the admissibility of expert testimony under Fed. R. Evid. 702, and she fails to acknowledge the actual language of the alcohol exclusion.

**A.   PLAINTIFF MISSTATES THE TEST UNDER FED. R. EVID. 702.**

It is undisputed that Decedent consumed alcohol on the boat, Decedent's BAC was at least 0.128 when he died, Decedent was intoxicated when he entered the water to free the anchor, and Decedent's BAC was sufficiently high that it was reasonable to conclude that the Decedent was experiencing the clinical effects of alcohol intoxication at the time of his death. (**Exhibit 8**, Urfer Dep. at 23:2-6; 66:25-67:5.) Standard's experts have thus opined that at his BAC, Decedent would have suffered from slower

reaction times, gross motor impairment, and impaired judgment and that alcohol caused or contributed to Decedent's accident or death.  (**Exhibit 1**, Beeson Report at 1; **Exhibit 2** Weiner Report at 3.)

The primary challenge Plaintiff makes to Standard's experts is that Standard improperly applied the exclusion because other members of the boating party will testify that Decedent did not appear drunk when he entered the water to free the anchor.  This challenge may relate to the underlying factual basis for Standard's application of the exclusion, but it does not affect whether Standard's toxicology experts used reliable methods.  Rather, the principles applied in the field in which the experts practice, i.e., toxicology, determine whether Standard's experts used reliable methods.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (reliability inquiry intended "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").  Accordingly, Plaintiff's focus in the Motion on the underlying factual basis of her claim is misplaced and does not support her position that Standard's toxicology experts should be stricken.

### B. PLAINTIFF MISSTATES THE TERMS OF THE POLICY

Plaintiff also contends that to rely on the alcohol exclusion, it must be determined that:  "**A)** The insured must be intoxicated; **B)** the insured must be suffering specific affects of intoxication; and **C)** the specific affects of alcohol affecting the insured must cause or contribute to the insured death."  (Motion at 3-4 (grammar in original).)  Plaintiff then asserts that Standard's toxicology experts must follow this same three-element

process and that since the experts cannot render an opinion on element B, their testimony must be excluded. Plaintiff is wrong in multiple respects.

First, the alcohol exclusion says nothing about "specific affects" or "intoxication". Rather, the exclusion in Standard's policy states:

> No AD&D Insurance benefit is payable if the ***accident or Loss*** is ***caused or contributed to*** by any of the following:
>
> \* \* \*
>
> The voluntary use or consumption of any poison, chemical compound, alcohol or drug, unless used or consumed according to the directions of a Physician.

(**Exhibit 13**, Insurance Policy, Bates No. STND 13-01951-00082) (emphasis added).) Thus, Standard need not show that Decedent was suffering from the "specific affects of intoxication." Rather, Standard need only show that the consumption of alcohol caused or contributed to Decedent's accident or death.

Second, Plaintiff continues to ignore the phrase "contributed to" and the word "accident" in the exclusion. Contrary to Plaintiff's argument, Standard need not show that alcohol was the sole cause of Decedent's death to apply the exclusion. Rather, the exclusion applies if alcohol caused or contributed to the death or if alcohol caused or contributed to the accident.

Once again, the factual dispute that forms the basis for Plaintiff's Motion does not support her request to strike Standard's experts and the Motion should be denied.

## II. STANDARD'S EXPERTS USED RELIABLE METHODS AND DATA TO REACH THEIR OPINIONS

Plaintiff does not, and based on the testimony of her own expert cannot, dispute the underlying scientific data or methodology used by Standard's toxicologist experts. When assessing the reliability of expert testimony, courts may consider the following factors, among others:

> (1) whether the opinion is susceptible to testing and has been subjected to such testing;
>
> (2) whether the opinion has been subjected to peer review;
>
> (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and
>
> (4) whether the theory has been accepted in the scientific community.

Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1205 (10th Cir. 2002). "The [proponent of the expert] need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the [proponent] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999) (citation omitted).

In this case, Drs. Beeson, Weiner, and Hatten each performed similar analyses. They evaluated the toxicology report, autopsy report, sheriff's investigators report, and investigator's case notes from interviews of the other members of the boating party. Drs. Beeson, Weiner, and Hatten then cross-referenced Decedent's BAC with a well-

established body of medical and statistical literature on the effects of alcohol to determine the effects Decedent would likely be experiencing based on his BAC.

As demonstrated by the lengthy list of references attached to Dr. Hatten's report, the effects of alcohol on humans are well-known and heavily studied. (**Exhibit 9**, Hatten Report at References.) Notably, Plaintiff does not challenge any of the underlying studies, methods, or data on which Drs. Beeson, Weiner, and Hatten rely. And the testimony of Plaintiff's own toxicology expert, Ms. Urfer, establishes the acceptability of those studies. Ms. Urfer agrees that data concerning the effects of alcohol on humans, the data on which Standard's experts relied in forming their opinions, is based on accepted studies of tens of thousands of individuals. (**Exhibit 8**, Urfer Dep. at 14:22-15:17.) Ms. Urfer explained that the effects of alcohol on the human body are classified into stages on what is known as the Duboski chart and Decedent would fall into the "excitement" stage on that chart. (**Exhibit 8**, Urfer Dep. at 14:22-15:17; 19:25-20:12.) She explained that in the excitement stage, a person would exhibit "emotional instability, increased reaction time, sensory motor incoordination, impaired balance, slurred speech, vomiting and drowsiness." (**Exhibit 8**, Urfer Dep. at 19:25-20:12.) In other words, Ms. Urfer agrees with the basic premise used by each of Standard's toxicology experts. Indeed, comparing the facts of this case to accepted medical data is the epitome of a reliable methodology.

Since Standard's toxicology experts used a method that is subject to testing and has been tested, has been peer reviewed, and is accepted in the medical community, there is no basis to strike Standard's experts.

### III. PLAINTIFF'S CHALLENGE GOES TO CREDIBILITY AND DOES NOT SUPPORT STRIKING STANDARD'S EXPERTS

Rather than challenge their qualifications, underlying methodology, or the extensive scientific literature and testing upon which Standard's toxicology experts rely, Plaintiff instead asserts that the expert testimony should be excluded because the testimony is not based on sufficient facts or data. Plaintiff argues that because Standard's experts did not interview the other members of the boating party their opinions regarding the impact of alcohol are unreliable extrapolations. (Motion at 9-13.)

Plaintiff misses the mark because, as courts have already acknowledged, eyewitness accounts of a person's actions are often <u>unreliable</u> in assessing whether that person is under the influence of alcohol. See <u>Olson v. Ford Motor Co.</u>, 481 F.3d 619, 629 (8th Cir. 2007) (affirming admission of expert testimony on effects of alcohol that contradicted eyewitness testimony). Courts facing similar <u>Daubert</u> challenges have held that specific evidence of an accident victim's behavior prior to the accident is not a prerequisite to rendering an opinion about the cause of an accident or a victim's impairment. See, e.g., <u>Bocanegra v. Vicmar Servs., Inc.</u>, 320 F.3d 581, 586-87 (5th Cir. 2003) (reversing exclusion of toxicology expert who opined that ingestion of marijuana helped cause car accident); <u>Miles v. Gen. Motors Corp.</u>, 262 F.3d 720, 724 (8th Cir. 2001) (testimony about cause of accident properly based on expert's review of police report, photographs of scene, plaintiff's medical records, plaintiff's radiology reports, witness statements and depositions, and medical literature); <u>Carter v. Greenbrier Rail Servs.</u>, 2012 WL 1666434, *3 (D. Kan. May 11, 2012) (overruling objection to toxicology expert that used studies on effects of marijuana as basis upon which expert formed

11

ultimate conclusion); BNSF Ry. Co. v. LaFarge Sw., Inc., 2009 WL 4279850, *9-*13 (D.N.M. Feb. 3, 2009) (overruling Daubert challenge to toxicology that opined that victim was impaired by marijuana); DeLatorre v. Minnesota Life, 2005 WL 2338809, *6-*7 (N.D. Ill. Sept. 16, 2005) (overruling Daubert challenge to expert opinion that intoxication was cause of accident and noting that expert's reliance on toxicology report "was entirely reasonable under the circumstances").

"[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination." Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 970 (8th Cir. 1995) (emphasis added); Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995) ("weaknesses in the data upon which [the] expert relied go to the weight the jury should have given her opinions, they did not render her testimony too speculative as a matter of law"). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. "These conventional devices . . . are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." Id.

In this case, Standard disputes Plaintiff's position regarding the need for factual evidence and the weight to be given that evidence.[1] However, this type of dispute is

---

[1] Plaintiff's challenge to the factual basis for the experts' opinions is unfounded. It is undisputed that Decedent consumed alcohol on the boat, Decedent's BAC was 0.128, Decedent was intoxicated when he entered the water to free the anchor, and Decedent's BAC was sufficiently high that it was reasonable to conclude that Decedent was experiencing the clinical effects of alcohol intoxication at the time of his death. (**Exhibit 8**, Urfer Dep. at 23:2-6; 66:25-67:5.) Plaintiff also suggests that Standard acted improperly because it did not interview

12

one that Daubert and its progeny say should be left for cross examination, and not one that supports the drastic measure Plaintiff seeks here. Daubert, 509 U.S. at 596; Gomez, 50 F.3d at 1519.

## IV. PLAINTIFF STIPULATED TO THE ADMISSIBILITY OF THE EXPERT OPINIONS OF TWO OF THE PHYSICIANS

Plaintiff seeks to strike the testimony Drs. Beeson, Weiner, and Hatten. Plaintiff fails to mention, however, that Drs. Beeson and Weiner rendered their opinions while Standard was reviewing Plaintiff's AD&D claim prior to litigation. For that reason, the opinions of Drs. Beeson and Weiner are found in written reports contained within Standard's claim file.

Plaintiff has already stipulated to both the authenticity and admissibility of every document in the claim file. (See Pretrial Order [Doc. # 42] § 4 (stipulating to authenticity and admission of claim file).). Thus, Plaintiff has already stipulated to the admissibility of the documents that contain Drs. Beeson's and Weiner's expert opinions. For that reason alone, Plaintiff's attempt to exclude the expert testimony of Drs. Beeson and

---

the other members of the boating party. However, Plaintiff fails to acknowledge that Standard had statements from the other members of the boating party. First, Standard had the reports from the Sheriff's investigators, which included interviews of the other members of the boating party from the night Decedent died. Second, Standard had statements from the other members of the boating party that Plaintiff's attorneys provided as part of the claim investigation. Thus, the suggestion that Standard did not have information from the other members of the boating party is incorrect. Moreover, there are frequently situations where an insurance company receives conflicting information. In this instance, the other members of the boating party, all of whom were friends with the Decedent, all of whom consumed alcohol that night, and all of whom have had to deal with the decisions made that night, have stated that the Decedent showed no signs of any specific effects of alcohol. At the same time, all of the toxicology experts have stated that the Decedent was intoxicated and would have been experiencing the effects of alcohol intoxication. While the weight Standard gave to each of those pieces of information may be relevant to this lawsuit, it is not relevant to whether the opinions of Standard's toxicology experts are reliable.

13

Weiner lacks merit.

### V. PLAINTIFF MISSTATES THE CAUSAL CONNECTION THAT MUST BE ESTABLISHED TO APPLY THE EXCLUSION

Finally, Plaintiff's reference to Equitable Life Assurance Society v. Hemenover, 67 P.2d 80 (Colo. 1937) and other cases discussing insurance policy alcohol exclusions is also misplaced. (See Motion at 14.) Equitable predates the Federal Rules of Evidence by nearly forty years and says nothing about the admissibility of expert opinions. None of the other cases cited by Plaintiff concern the admissibility of expert opinion testimony, either. Thus, those cases do not apply to the Motion.

Further, Plaintiff's reference to those cases to support her position on causation continues Plaintiff's misapplication of the substantive law because none of those cases address an exclusion like the exclusion in this case. For example, Equitable concerned whether a drug overdose constituted a death by "accidental means" or the taking of "poison." See 67 P.2d at 81-82.[2] Hastie v. J.C. Penney Life Ins. Co. and Harris v. Carolina Life Ins. Co. both apply Florida law and address an "intoxication" exclusion, not the broader type of exclusion at issue here. See 115 F.3d 895, 896 (11th Cir. 1997); 233 So.2d 833, 833-34 (Fla. 1970). Balthis v. AIG Life Ins. Co. and Riordan v. Commercial Travelers Mut. Ins. Co. are likewise inapplicable because they relate to an "intoxication" exclusion. See 102 F. Supp. 2d 668, 669 (W.D. Va. 2000) (upholding denial of coverage under intoxication exclusion in ERISA case); 525 P.2d 804, 807-08 (Wash. App. 1974).

---

[2] Plaintiff also misrepresents the holding of Equitable in her Motion. Equitable says nothing about "predominant cause," and the language quoted by Plaintiff does not appear in the Equitable opinion.

14

## **CONCLUSION**

Plaintiff applies the wrong test for admission of expert testimony and repeatedly misapprehends the opinions offered by Standard's toxicology experts in this case. Thus, for the reasons above, Plaintiff's Motion should be denied. If the Court is inclined to exclude Drs. Beeson and Weiner, then Standard should be permitted to introduce the written reports form Drs. Beeson and Weiner contained in the claim file and on which Standard relied in investigating Plaintiff's AD&D claim. Finally, if Standard's toxicology experts are stricken, Plaintiff's toxicology expert, Ms. Urfer, should also be stricken. If necessary, Standard requests a hearing on the admissibility of Drs. Beeson, Weiner, and Hatten per Fed. R. Evid. 104.

DATED this 1st day of December, 2014.

Respectfully Submitted,

Polsinelli PC

*s/Thomas H. Wagner*
Stacy A. Carpenter, Esq.
Thomas H. Wagner, Esq.
Joseph T. VanLandingham, Esq.
1515 Wynkoop St., Ste. 600
Denver, CO  80202
303-572-9300
scarpenter@polsinelli.com
twagner@polsinelli.com
jvanlandingham@polsinelli.com
*Attorneys for Defendant Standard Insurance Co.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing was duly served this 1st day of December, 2014 to each of the following:

| | |
|---|---|
| John H. Inderwish | ( ) via U.S. Mail |
| Daniele W. Bonifazi | ( ) via Hand Delivery |
| Inderwish & Bonifazi, P.C. | ( ) via E-Mail |
| 1873 S. Bellaire Street, Suite 1401 | ( ) via Overnight Mail |
| Denver, CO 80222 | (x) via CM/ECF |
| *Counsel for Plaintiff* | |

               *s/Thomas H. Wagner*
               Thomas H. Wagner